United States District Court
Southern District of New York
------------------------------------------------------------------x
Benjamin Herrera ("Collazo"),

                              Plaintiff,

                -v-

The City of New York, New York City Department of
Correction ("DOC") Officer Anthony Bozymowski,
Shield No. 13032, and DOC Officer Timothy Sands,
Shield No. 9100, in their individual capacities,

                            Defendants.
------------------------------------------------------------------x

**Complaint and Demand for a Jury Trial**

17-CV-4047

        Plaintiff Benjamin Herrera ("Collazo"), through his attorney David B. Rankin, as and for his complaint, does hereby state and allege:

### Preliminary Statement

1. Pursuant to the Civil Rights Act of 1871, amended and codified as 42 U.S.C. § 1983, plaintiff Benjamin Collazo brings this civil rights action for violations of his constitutional rights and for injuries caused by officials of the New York City Department of Correction ("DOC") and by the municipal policies, practices and customs of their employer, defendant City of New York.

2. This complaint – arising from the use of force against Mr. Collazo – seeks compensatory damages, punitive damages, and attorneys' fees.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of Mr. Collazo's constitutional rights.

1

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1-2) in that defendant City of New York resides in this venue and Mr. Collazo's claims arose within the confines of this judicial district.

5.     An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## Parties

6.     Plaintiff Mr. Collazo was at all times relevant to this action a resident of the County of Bronx in the State of New York.

7.     Defendant City of New York, through its agency DOC, is authorized under the laws of the State of New York to maintain correctional facilities, which act as its agent and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of correctional facilities and the employment of correctional officers under its employ.

8.     Defendant DOC Officer ("C.O.") Anthony Bozymowski, Shield No. 13032("Bozymowski"), and C.O. Timothy Sands, Shield No. 9100 ("Sands"), were at all times relevant herein an employee and agent of the City, through DOC.

9.     At all times relevant herein, defendants C.O. Bozymowski, and C.O. Sands (collectively referred to herein as "officer-defendants") were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and/or DOC, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their respective duties. They were acting for and on behalf of the City and/or DOC at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the City and/or DOC and incidental to the lawful pursuit of his duties as an officer, employee and agent of the City and/or DOC.

10.    The officer-defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. Collazo's rights.

11. At all relevant times, the officer-defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

### Statement of Facts

12. The incident occurred on April 27, 2015, at approximately 8:00 a.m. on Rikers Island in the Bronx County in the City and State of New York.

13. Mr. Collazo was being taken to Court by the officer defendants in Transportation Bus No. 368B.

14. Mr. Collazo complained to the officer-defendants that his hand-cuffs were too tight.

15. After sometime, the officer defendants agreed to loosen Mr. Collazo's handcuffs, and subsequently attempted to handcuff Mr. Collazo to another inmate.

16. Mr. Collazo informed him that he did not want to be handcuffed to another inmate.

17. Shortly thereafter Officer Defendant Bozymowski began punching Mr. Collazo about the face and head, and otherwise used force against him.

18. Defendant C.O. Sands failed to intervene in the beating or assisted in the same.

19. The beating left an inch and a half long scar on Mr. Collazo's face.

20. Mr. Collazo was denied proper medical treatment for his scar.

21. To cover-up their malfeasance, the officer-defendants changed Mr. Collazo with various disciplinary violations.

///

## Claim for Relief

### 42 U.S.C. § 1983
### Violations of the Fourth and Fourteenth Amendments
(*Against all defendants*)

22. Mr. Collazo repeats and re-alleges each of the above paragraphs with the same force as if set forth herein.

23. By officer-defendants using unlawful force against Mr. Collazo which served no legitimate penological purpose and was objectively unreasonable under the circumstances (as more fully set forth above), and by failing to intervene in each other's unlawful uses of force and the retaliation for making a complaint, the officer-defendants, acting under color of state law and without lawful justification, intentionally, and/or with deliberate indifference to or a reckless disregard for the natural and probable consequences of his acts, caused injury and damages to Mr. Collazo in violation of his rights secured by the Fourth and Fourteenth Amendments, through 42 U.S.C. § 1983.

24. For decades, through Department reports, civil litigation, and media reports, the DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities under the control of the DOC, including at the holding cells in the City's courts.

25. Several entities have conducted major investigations into patterns of abuse by DOC staff on Rikers Island, including the United States Attorney's Office for the Southern District of New York, the New York City Department of Health and Mental Hygiene, the New York City Department of Investigation, and the New York Times. Several entities have conducted major investigations into patterns of abuse by DOC staff on Rikers Island, including the United States Attorney's Office for the Southern District of New York, the New York City Department of

Health and Mental Hygiene, the New York City Department of Investigation, and the New York Times.

26. After a months-long investigation of practices at Rikers Island, the Times reported that "[b]rutal attacks by corrections officers on inmates" are "common."[1] The investigation found that guards "repeatedly responded with overwhelming force to even minor provocation," and that"[a]t times, a slight aimed at a corrections officer set off a chain of events that ended savagely." *Id.* The former director of the jail's mental health service pointed to "[h]orrible brutality' on the part of guards. *Id.* The Times found that "the demonization of detainees is embedded in everyday practice,"[2] and that a "reluctance of the City's Department of Correction to acknowledge the problem and the fact that guards are rarely punished" contributes to a "culture of brutality."[3]

27. On June 2, 2014, the DOC's own Commissioner, Joseph Ponte, testified before the New York City Council concerning the unacceptable levels of violence within the DOC. He admitted that the Department "is in deep trouble" and stated that the DOC's "past performance has been unacceptable."[4] Mr. Ponte himself cited to statistics on increasing violence in the City's jails dating back to 2010, well before the assault on Mr. Collazo. *Id.* When asked to respond to a New York Times investigation reviewing hundreds of cases of physical abuse by DOC officers, the Department conceded its awareness of a pattern of abuse over many years, responding "[i]t takes time to undo decades of mismanagement."[5]

---

[1] Michael Winerip & Michael Schwirtz, Rikers: Where Mental Illness Meets Brutality in Jail, N.Y. Times (Jul. 14, 2014), http://www.nytimes.com/2014/07/14/nyregion/rikers-study-finds-prisoners-injured-by-employees.html.
[2] Michael Winerip & Michael Schwirtz, Even As Many Eyes Watch, Brutality Persists at Rikers, N.Y. Times (Feb. 21, 2015), http://www.nytimes.com/2015/02/22/nyregion/even-as-many-eyes-watch-brutality-at-rikers-island-persists.html.
[3] Winerip & Schwirtz, *Rikers: Where Mental Illness Meets Brutality in Jail.*
[4] Erin Durkin, *City's New Jail Boss Says His Department is in 'Deep trouble'*, N.Y. Daily News (June 2, 2014), http://www.nydailynews.com/new-york/jail-boss-department-mess-article-1.1814744.
[5] Winerip & Schwirtz, *Rikers: Where Mental Illness Meets Brutality in Jail.*

5

28. Likewise, on August 4, 2014, the United States Attorney for the Southern District of New York released a report that documented deeply disturbing conclusions reached after a multi-year investigation of conditions on Rikers Island pursuant to the federal Civil Rights of Institutionalized Persons Act. The U.S. Attorney's office notified the City of its intent to conduct an investigation in January 2012, which shows that the Office for years has suspected a problem within the DOC.

29. In a report entitled, "CRIPA Investigation of the New York City Department of Correction Jails on Rikers Island," the U.S. Attorney concluded that a "deep-seated culture of violence" and a "pervasive climate of fear" are ever-present in the jail, and that officers use excessive force and injure prisoners at a "staggering" rate, all within a system that fosters and guarantees impunity. [6] While the report focused on the adolescent population at Rikers, the report also noted that "the systemic deficiencies identified in this report may exist in equal measure at the other jails on Rikers." *Id.* These systemic deficiencies include "inadequate reporting by staff of the use of force, including false reporting"; and "general failures by management to adequately address the extraordinarily high levels of violence." *Id.* The report also noted that staff-on-inmate violence was "particularly common in areas without video surveillance cameras." *Id.*

30. According to the New York Times, "use of force by officers is up nearly 90 percent over the last five years, even as the jail population has declined."[7] Despite actual knowledge and

---

[6] U.S. Attorney's Office, S.D.N.Y., *CRIPA Investigation of the New York City Department of Correction Jails on Rikers Island,* Aug. 4, 2014, http://www.justice.gov/sites/default/files/usao-sdny/legacy/2015/03/25/SDNY%20Rikers%20Report.pdf.
[7] Winerip & Schwirtz, *Rikers: Where Mental Illness Meets Brutality in Jail.*

6

supporting data indicating rising violence within the correctional system, the City has yet to adequately address the problem.[8]

31. The City has not taken sufficient steps to curb the abuse that occurs on a daily basis in its jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

32. In fact since 1999, senior supervisors and uniformed staff in the DOC have been sued repeatedly by pretrial detainees and inmates alleging staff beatings. Many of these cases include remarkably similar allegations of misconduct. See e.g.,

- *Martinez* v. *Robinson,* No. 99 Civ. 11911 (S.D.N.Y.) (alleging beat-ups in Bronx Criminal Court holding pens resulting in fractured rib and swelling and bruises on ankles, wrists, head, and thigh);

- *Boomer* v. *Grant,* No. 00 Civ. 4709 (S.D.N.Y.) (alleging beat-up in Bronx County Supreme Court holding pen resulting in seizure and severe back, left elbow, and wrist pain);

- *Dixon* v. *Ragland,* No. 03 Civ. 826 (S.D.N.Y.) (alleging beat-up in courthouse holding pens; court found in favor of plaintiff and imposed punitive damages upon defendant Ragland, a DOC officer);

- *Colon* v. *City of New York,* No. 04 Civ. 3385 (E.D.N.Y.) (alleging beat-up of inmate in Queens House of Detention resulting in injury and scarring to ear, face, back, arms, and eyes);

- *Parker* v. *City of New York,* No. 05 Civ. 1803 (S.D.N.Y.) (alleging beat-up in Manhattan Criminal Court holding pens resulting in abrasion to right knee and minor trauma);

- *Candeau* v. *City of New York,* No. 06 Civ. 115 (E.D.N.Y.) (alleging beat-up of inmate in Anna M. Kross Center resulting in fractured wrist, broken tooth, severe swelling above right eye, and multiple lacerations and contusions about head and body);

- *Bailey* v. *City of New York,* No. 07 Civ. 2292 (S.D.N.Y.) (alleging beat-up of inmate in Robert N. Davoren Complex resulting in fractures);

- *Burke* v. *City of New York,* No. 07 Civ. 6510 (S.D.N.Y.) (alleging beat-up of inmate in Otis Bantum Correctional Center resulting in broken eye socket);

---

[8] City of New York, *Preliminary Mayor's Management Report* at 55 (Feb. 2015)

- *Williams* v. *City of New York,* No. 07 Civ. 11055 (S.D.N.Y.) (alleging beat-up of pretrial detainee in Otis Bantum Correctional Center resulting in fractured jaw and facial bones, and a torn earlobe);

- *Grant* v. *City of New York,* No. 08 Civ. 5050 (E.D.N.Y.) (alleging physical assault of inmate at Rikers Island Correctional Facility resulting in laceration to arm);

- *Youngblood* v. *Baldwin,* No. 08 Civ. 5982 (S.D.N.Y.) (alleging beat-up of pretrial detainee at George R. Vierno Center resulting in head trauma, multiple lacerations to his head and face, and contusions on his arm, head, face, and neck);

- *Mull* v. *City of New York,* No. 08 Civ. 8854 (S.D.N.Y.) (alleging beat-up of inmate in Anna M. Kross Center resulting in traumatic brain injury, partial loss of eyesight, partial loss of hearing, and requiring the victim to take seizure medications);

- *Colihan* v. *City of New York,* No. 08 Civ. 7190 (S.D.N.Y.) (alleging beat-up of sick inmate at Rikers Island facility ultimately resulting in death);

- *Smith* v. *Doe,* No. 08 Civ. 10437 (S.D.N.Y.) (alleging violence by DOC officer in Bronx Criminal Court holding pen; dismissed without ruling on the merits because DOC officer had died);

- *Shuford* v. *City of New York,* No. 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups of pretrial detainees at Robert N. Davoren Complex resulting in facial fractures);

- *Cherry* v. *City of New York,* No. 09 Civ. 1141 (E.D.N.Y.) (alleging beat-up of inmate in Otis Bantum Correctional Center resulting in displaced medial fracture of right orbit of right eye and pain and permanent impairment of vision in right eye);

- *Belvett* v. *City New York,* No. 09 Civ. 8090 (S.D.N.Y.) (alleging beat-ups of pretrial detainees at George Motchan Detention Center and Robert N. Davoren Complex resulting in facial fracture);

- *Howard* v. *New York City Department of Corrections,* No. 11 Civ. 2522 (S.D.N.Y.) (alleging beat-up of inmate in Anna M. Kross Center resulting in dislocation of right shoulder);

- *Edwards* v. *City of New York*, No. 14 Civ. 10058 (S.D.N.Y.) (beating in Bronx Central Booking by corrections officers in riot gear);

- *McLeod* v. *City of New York*, No. 14 Civ. 07904 (S.D.N.Y.) (beating in Bronx Central Booking by corrections officers, also allegations of a strip search preceding the beating).

33. Through all these cases, the City – through the DOC – has been made aware of the widespread practice of DOC staff members of using excessive, unnecessary, and unconstitutional force to injure, and not simply to restrain, individuals in its custody. The City has also been made

aware of the failure of the DOC's Investigation Division to investigate allegations of misconduct adequately and of the de facto refusal of the Department to bring effective disciplinary charges against its officers, to promote institutional reform, and to protect the safety of arrestees, pretrial detainees, and prisoners in DOC custody.[9]

34. The City cannot credibly contend that it is unaware either of the pattern of abuse that occurs with regularity in New York City jails or of the failure of the DOC to take sufficient measures to investigate, discipline, and end this abuse.

35. The above-described policies, practices, customs, and usages, and the above-described failure to properly hire, train, screen, supervise, or discipline, were direct and proximate causes of the unconstitutional conduct alleged herein, causing injury and damage in violation of Mr. Collazo's constitutional rights under the Fourth and Fourteenth Amendments, through 42 U.S.C. § 1983.

36. As a result of the foregoing, Mr. Collazo suffered conscious pain and suffering, damage, and injury.

## Jury Demand

37. Mr. Collazo demands a trial by jury in this action on each and every one of his damage claims.

## Prayers for Relief

*Wherefore*, Mr. Collazo demands judgment against the defendants jointly and severally and prays for relief as follows:

    a. That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation;

    b. That he be awarded punitive damages against the officer-defendants;

---

[9] U.S. Attorney's Office, S.D.N.Y., *CRIPA Investigation of the New York City Department of Correction Jails on Rikers Island* at 22-30.

    c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

    d. For such other further and different relief as to the Court may seem just and proper.

Dated:     May 30, 2017
           New York, New York

Respectfully submitted,

/s/

By: _____
David B. Rankin
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507
e: david@drmtlaw.com